NOONAN, Circuit Judge,
dissenting:
We measure Dominique Arotzarena’s liability by what he provided the magistrate who issued the arrest warrant for Harvey. See United States v. Gourde, 440 F.3d 1065, 1067 (9th Cir.2006) (en banc).
The foundation of the identification of suspects was a surveillance camera in the San Pablo Liquor Market. Arotzarena omitted the fact that the compact disc recording from the surveillance camera was not functioning at the time of the Cl’s interview. The recording, however, had been posted on the internet by a news broadcaster. Arotzarena did not note that the Cl viewed the lower-quality internet version of the recording; that the film was blurry; or that the color resolution was low.
Arotzarena’s affidavit declares: “On November 25, 2005, I met with a confidential informant. This Cl had independent knowledge of this group.” The immediate referent of “this group” is given in the preceding paragraph of the affidavit as the group of men who had entered the San Pablo Market. The affidavit provides no information as to how the Cl had independent knowledge of “this group.”
Arotzarena’s affidavit goes on: “Through the video he [the Cl] was able to identify five people. He positively identified a person known to him as ‘Jamal Bey,’ ‘Asad Bey’ and ‘Yusuf Bey.’ He was also able to identify a light skin male black, maybe half Asian. He also identified an elderly male black.”
The Cl was then shown DMV photos and he matched them to the persons he had named in the video. And Asad Bey was said to be Demetrius Harvey. Nothing more appears in the affidavit as to Harvey.
The affidavit told the magistrate that a confidential informant had “positively” identified Harvey as a participant in the crime. The credentials of the Cl were not given. No reason was provided as to how the Cl should have particular information about “this group,” i.e., those men who had invaded the San Pablo Market. No information was provided to the magistrate as to the quality of the film, the Cl’s first misidentification of Harvey, and the limited profile of “Harvey” captured on the film. The magistrate, instead, was informed by Arotzarena’s affidavit that the identification of Harvey was as positive as that made by the Cl of four other men. A reasonable factfinder would be justified in finding that these facts constitute a reckless disregard for the truth. See Butler v. Elle, 281 F.3d 1014, 1026 (9th Cir.2002).
Whether Arotzarena’s misrepresentations were material to the determination of probable cause is a question for the court. Arotzarena’s statement that the Cl had “independent knowledge of this group” was a material misrepresentation. Nothing in the affidavit, nothing in Arotzarena’s “Case Notes” shows that the Cl had knowledge of “this group.” Although it is not mentioned in the affidavit, it was known to the police that the Cl worked at Your Black Muslim Bakery and must therefore have known some men of the sixty who worked there. That knowledge did not translate into knowledge of the group of invaders of the liquor store.
Arotzarena’s affidavit contained a second material misrepresentation: that the Cl had “positively” identified each of the suspects, as though the same identification were made of each. Three of the men faced the camera. Their faces could be *705 positively identified. “Harvey” was turned from the camera. The identification was half a guess. This guess followed the Cl’s first mistaken identification of a person with a very different appearance.
The police knew that the invaders worked at Your Black Muslim Bakery. It was tempting for Arotzarena to guess that the Cl, who had worked there, knew the men he identified, but the guess had no foundation. It was also important to the police to net as many members of the mob as they could. Excepting these material misrepresentations, probable cause was absent for the arrest of Harvey. See Crowe v. County of San Diego, 593 F.3d 841, 870 (9th Cir.2010).
It’s a jury question whether in these circumstances Arotzarena acted reasonably or recklessly when he made the two misrepresentations to the magistrate, who was led to authorize the arrest of an innocent man. See Butler, 281 F.3d at 1024.
The damages Harvey might be awarded may not be great. Principle is what is at stake. Often the Fourth Amendment is invoked in criminal cases as a shield by those caught in criminal activity where overzealous law enforcement has overstepped a constitutional boundary. Here, the Fourth Amendment is invoked by innocence. The Constitution is the source of a vital right, whose vindication is no small victory for democratic government.